FILED
CLERK, U.S. DISTRICT COURT

JULY 20 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RS _____ DEPUTY

JUSTIN H. WILKES
 1727 ½ Webster Avenue
Los Angeles, CA 90026
Telephone: (360) 362-8172
Email: justicewithjustin@gmail.com

Self-Represented

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN H. WILKES,<br><br>                 Plaintiff,<br><br>     v.<br><br>THE PROFESSIONAL BASKETBALL<br>CLUB, LLC, CLAY BENNETT, NBA<br>INTERNATIONAL SERVICE CO.<br>HOLDINGS INC., WARNERMEDIA<br>SERVICES, LLC,<br><br>                 Defendants. | Case No.: **2:21-CV-05868-SVW-DFMx**<br><br>**COMPLAINT FOR DAMAGES**<br>(1) RACE DISCRIMINATION<br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) because each United States district court subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because this civil action arises under

the laws of the United States.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. 2000e-5(f)(3) because a substantial part of the events giving rise to this claim occurred in this district and because Plaintiff would have worked in this district but for the alleged unlawful employment practice by Defendants.

## **INTRODUCTION**

3.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, which prohibits employment discrimination based on race. This action alleges that Defendants discriminated against Plaintiff because of Plaintiff's race as Black or African American. Plaintiff seeks damages in an amount sufficient to compensate Plaintiff for Plaintiff's loss resulting from Defendants' conduct. Plaintiff hereby requests a jury trial on this matter.

## **PARTIES**

4.      Plaintiff JUSTIN H. WILKES is an individual and resident of Los Angeles County, California.

5.      Defendant THE PROFESSIONAL BASKETBALL CLUB, LLC ("Oklahoma City Thunder") is an Oklahoma domestic limited liability company, with its principal place of business at 211 N Robinson 10th Floor, Oklahoma City, OK 73102.

6.      Defendant CLAY BENNETT is an individual and resident of Oklahoma County, Oklahoma.

7.     Defendant NBA INTERNATIONAL SERVICE CO. HOLDINGS INC. (the "NBA") is a New York domestic corporation, with its principal place of business at 645 Fifth Avenue, New York, NY 10022.

8.     Defendant WARNERMEDIA SERVICES, LLC is a New York domestic limited liability company, with its principal place of business at 30 Hudson Yards, New York, NY 10001.

## STATEMENT OF FACTS

**I.     Defendants Discriminated Against Plaintiff in Violation of Title VII of the Civil Rights Act of 1964**

9.     This is an action for damages based upon Defendants' practice of employment discrimination against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

10.     Plaintiff is Black or African American.

11.     In November 2020, Plaintiff applied for a legal position with Defendants. Defendants sought applicants to fill a Vice President, Corporate Legal position for Oklahoma City Thunder on a remote basis.

12.     Defendants intentionally discriminated against Plaintiff. As a result, Plaintiff suffered severe mental and emotional distress.

13.     On November 5, 2020, Defendants reached out to Plaintiff on LinkedIn

regarding a Vice President, Corporate Legal position.

14.     Defendants included in the subject line of the message to Plaintiff their desire for Plaintiff to "drive legal for Oklahoma City Thunder." Plaintiff would eventually discover this statement to be a farce.

15.     Defendants' Team Talent Acquisition Lead Christopher Montefusco reached on behalf of the Defendants. Mr. Montefusco expressed an overwhelming interest in Plaintiff with regards to the Vice President, Corporate Legal position. Mr. Montefusco shared a recent conversation with Defendants' Executive Vice President and Chief Administrative Danny Barth and Defendants' Vice President of Human Resources Katy Semtner. Mr. Montefusco explained that Mr. Barth and Ms. Semtner were in search to hire a Vice President to support the legal side of Defendants' company. Mr. Montefusco also explained that Mr. Barth and Ms. Semtner sought a new hire to be part of Defendants' executive leadership team.

16.     Mr. Montefusco mentioned noticing Plaintiff's unique experiences. Mr. Montefusco mentioned noticing Plaintiff's professional accomplishments. Mr. Montefusco then explained Defendants' interest in reaching out to Plaintiff to determine Plaintiff's interest in pursuing the Vice President, Corporate Legal opportunity.

17.     Mr. Montefusco then asked Plaintiff to join Defendants' talent community. Mr. Montefusco asked Plaintiff to schedule a time for an interview. Mr.

Montefusco included a job announcement that Plaintiff was unable to open however.

18.    Plaintiff responded the same day. Plaintiff asked to learn more about the Vice President, Corporate Legal opportunity. Plaintiff also proposed an interview time on November 16, 2020.

19.    Mr. Montefusco confirmed.

20.    Later that day, Mr. Montefusco followed up. Mr. Montefusco provided Plaintiff a job announcement without a link. Plaintiff explained to Mr. Montefusco that Plaintiff could not see the job announcement. Mr. Montefusco then provided the correct link for Plaintiff to apply. Plaintiff was agitated.

21.    Plaintiff then noticed something peculiar. Defendants' job requisition included illegal criteria. For example, Defendants required applicants to be "well-spoken," which Plaintiff perceived as a direct affront.

22.    On November 16, 2020, Mr. Montefusco interviewed Plaintiff. However, Mr. Montefusco failed to confirm the interview with Plaintiff on this day, which made Plaintiff feel unsettle. During the interview, Mr. Montefusco provided a brief description of the position. Mr. Montefusco asked Plaintiff tough questions. Mr. Montefusco explained Defendants' desire to bring a new hire onboard quick. Mr. Montefusco then tentatively scheduled a follow-up interview with Ms. Semtner.

23.    Thereafter, things changed. Defendants decided to stall. Plaintiff grew

concerned.

24.    In the meantime, Defendants provided updates to Plaintiff by changing recruiters. Plaintiff began to feel misled.

25.    For example, on December 1, 2020, Mr. Montefusco reached out to Plaintiff again. Mr. Montefusco mentioned, contrary to their original conversation on November 5, 2020, that Defendants were still in the process of determining next steps for the Vice President, Corporate Legal position.

26.    Plaintiff would then have two scheduled interviews. However, Plaintiff only sat for one. Defendants obstructed the second interview during scheduling by making several racially insensitive comments. Defendants would later discriminate against Plaintiff by not alonging Plaintiff to proceed through the interview process.

27.    On one occasion, on December 18, 2020, Ms. Semtner provided Plaintiff a personal cellphone number to call for Plaintiff's first scheduled interview on December 22, 2020. Plaintiff got the impression that Plaintiff's chances were good. Ms. Semtner also asked for Plaintiff to send along a resume, which Plaintiff previously provided. Plaintiff started to feel antsy.

28.    On another occasion, on December 22, 2020, Plaintiff interviewed with Ms. Semtner. Ms. Semtner cleared up several inconsistencies that Plaintiff noticed when Defendants originally reached out. Ms. Semtner explained Defendants'

organization in-depth. Ms. Semtner then shared the names of other lawyers on staff, which countered Plaintiff's interpretation of the role. Hauntingly, Ms. Semtner mentioned a few assignments that the new hire would be asked to work on that struck Plaintiff. Ms. Semtner noted Defendants' Thunder Fellows Program. Ms. Semtner explained that the program was a partnership between Defendants and CAA Sports. Ms. Semtner explained that Defendants designed the program to unlock new opportunities in sports, technology and entertainment for Black students in the Tulsa region. Ms. Semtner explained that Defendants' guided the program around the 1921 Tulsa Race Massacre, which Plaintiff found culturally offensive. Things became adversarial at that point for Plaintiff.

29.     Concluding the interview, Ms. Semtner invited Plaintiff for a second interview with Mr. Barth. Plaintiff agreed.

30.     Before the second interview, Plaintiff received an alarming email.

31.     Plaintiff assumed that Defendants' delays during Plaintiff's interview process directly related to Defendants' views regarding race that were driven by the global pandemic.

32.     On January 11, 2021, Ms. Semtner sent Plaintiff the following email:

"Hi Justin,

I hope you are doing well! I apologize for the delay in getting

back to you for the next step in our recruiting process for the VP, Corporate Legal. Everything going on in our organization and in the world has taken my focus away from this process, but we are ready now to set up interviews with myself and Danny Barth, our Executive Vice President and Chief Administrative Officer. Danny is the head of our corporate office and this legal VP role will report to him.

We need to stretch our interviews out over a few weeks because of Danny's limited availability. And I'd like to offer a disclaimer up front that it's possible we'll have to reschedule if a conflict arises that he can't reschedule. If that's the case we'll reschedule as soon as possible.

Do either of these times work for you? (If not, please let me know and I can send a few additional options.)

- Wednesday 1/13 3:00-4:00 PM CST

- Tuesday 1/19 3:00-4:00 PM CST

I will follow up with an invite and additional details for a Microsoft Teams video call.

Thank you!

Katy"

33.     Ms. Semtner then explained, contrary to Plaintiff's conversation with Mr. Montefusco, that Defendants would require two to three additional interviews beyond this point. Plaintiff had had enough.

34.     Thereafter, Ms. Semtner and Plaintiff scheduled an interview for January 27, 2020.

35.     Plaintiff then rescheduled due to medical concerns. At the same time, Plaintiff was also displeased with Defendants' process. Plaintiff was offered little respect. Plaintiff had to settle the score. (Swish!)

36.     In response, Plaintiff was penalized for rescheduling. Defendants never followed up. Plaintiff could only conclude that Defendants' decision was based on Plaintiff's race. The decision was not favorable on Plaintiff's part.

37.     After receiving no response, Plaintiff then recalled that Defendants' actions did not comport with a disclaimer provided on the Vice President, Corporate Legal job announcement. For example, Defendants included the following:

> "The Professional Basketball Club, LLC is an Equal Opportunity Employer, considering applicants fairly on the basis of qualifications, experience and business needs. We value diversity and support an inclusive environment for all

employees."

38.     Even more shockingly, Plaintiff noticed that the Oklahoma City Thunder's disclaimer departed from the NBA's disclaimer. Plaintiff felt certain that Plaintiff's rights had been violated. For example, the language that the NBA used in a job announcement included:

> "We Consider Applicants For All Positions On The Basis Of Merit, Qualifications And Business Needs, And Without Regard To Race, Color, National Origin, Religion, Sex, Gender Identity, Age, Disability, Alienage Or Citizenship Status, Ancestry, Marital Status, Creed, Genetic Predisposition Or Carrier Status, Sexual Orientation, Veteran Status, Familial Status, Status As A Victim Of Domestic Violence Or Any Other Status Or Characteristic Protected By Applicable Federal, State, Or Local Law."

39.     Plaintiff then reached out to the NBA to share Plaintiff's concerns. Plaintiff reached out to NBPA's Executive Director Michele Roberts on February 18, 2021 and February 24, 2021. No response. Plaintiff reached out to NBA's Executive Vice President, Chief People and Inclusion Officer Oris Stuart on February 24, 2021 as well. Plaintiff, again, failed to receive a response.

40.     Defendants removed all avenues for Plaintiff to seek redress.

## II. The United States Equal Employment Opportunity Commission's Oklahoma City Area Office and Los Angeles District Office Discriminated Against Plaintiff After Rejection

41.     Following Plaintiff's rejection, Defendants' actions adversely affected Plaintiff's interactions with the Oklahoma City Area Office and the Los Angeles District Office of the Equal Employment Opportunity Commission ("EEOC"). Both offices of the EEOC sought to deprive Plaintiff of due process.

42.     On February 18, 2021, on one occasion, the EEOC prevented Plaintiff from scheduling an intake interview. This occurred after Plaintiff filed a charge of discrimination against Defendants at the same time with the Oklahoma City Area Office.

43.     On this occasion, the EEOC blocked Plaintiff's attempts to reschedule. Plaintiff made several attempts on the EEOC Public Portal. Each attempt to reschedule was unsuccessful. No available interview times were displayed.

44.     The EEOC then, on several occasions, harassed Plaintiff with reminder emails. For example, on February 23, 2021, the EEOC sent Plaintiff a reminder explaining that an intake interview was required to complete the filing process.

45.     On April 7, 2021, Plaintiff separately filed a signed charge of discrimination with Los Angeles District Office's Intake Supervisor Garrett Hoover.

Plaintiff did so in light of previous difficulties filing charges before on the EEOC website with the Oklahoma City Area Office, which ignored Plaintiff's attempts to file altogether.

46.     On April 16, 2020, Mr. Hoover followed up with Plaintiff by email. Mr. Hoover provided an update regarding Plaintiff's charge among others. Mr. Hoover explained that the Los Angeles District Office mailed a Notice of Right to Sue to Plaintiff regarding Plaintiff's charges separately against other companies. Defendants were not included. Mr. Hoover also explained that Plaintiff's charge against Oklahoma City Thunder was pending. The email sent by Mr. Hoover included several hyperlinks and text highlighted in red. Mr. Hoover's email signature also oddly included an invitation to a virtual breakfast briefing. The invitation was brightly displayed in different colors, which caused Plaintiff's vision to suffer.

47.     After experiencing difficulties, Plaintiff separately reached out to Los Angeles District Office's District Director. Plaintiff described experiencing several delays obtaining a Notice of Right to Sue with the Los Angeles District Office. Plaintiff failed to highlight that the Oklahoma City Area Office completely ignored Plaintiff's filing at that time. The Los Angeles District Office likely assumed it to be the case. Plaintiff, in an email, then requested Los Angeles District Office's District Director's assistance. However, Plaintiff's issues continued to persist.

48.     On April 19, 2021, Mr. Hoover further delayed with an update. Mr.

Hoover provided a status update. Mr. Hoover explained that Plaintiff would be notified by email once processing was complete with regards to Plaintiff's charges separately filed with the EEOC. Mr. Hoover noted that the Los Angeles District Office awaited the Oklahoma City Area Office to transfer Plaintiff's matter to the Los Angeles District Office. Mr. Hoover explained that this step was necessary to complete the filing. The email sent by Mr. Hoover included several hyperlinks and text highlighted in red, dark and light blue. Mr. Hoover's email signature included an invitation to a virtual breakfast briefing. The invitation was brightly displayed in different colors, which caused Plaintiff's vision to suffer. Mr. Hoover also failed to identify the parties associated with each charge number listed.

49.     On April 22, 2021, the Los Angeles District Office caused Plaintiff to receive a Notice of Right to Sue by mail with regards to multiple charged filed by Plaintiff in a single envelope. This time, the Los Angeles District Office mailed to Plaintiff in the same envelope separate notices with regards to Plaintiff's charges against Oklahoma City Thunder and Randstad US LLC. The envelope that Plaintiff received did not contain a delivery stamp.

## CAUSE OF ACTION

**(For Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 by Plaintiff Justin H. Wilkes against Defendant The Professional Basketball Club, LLC and Defendant The Professional Basketball Club, LLC, Defendant Clay Bennett, Defendant NBA International Service Co. Holdings Inc. and Defendant WarnerMedia Services, LLC)**

50.     Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

51.     Plaintiff believes and alleges that race was a motivating factor in Defendants' decision not to hire Plaintiff around January 2021.

52.     Defendants subjected Plaintiff to discrimination as an applicant for the Vice President, Corporate Legal position.

53.     Defendants' conduct as alleged constitutes an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

54.    Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race. Section 703(a)(1), as codified in 42 U.S.C. § 2000e-2(a)(1) of the United States Code, provides that it shall be an unlawful employment practice for an employer:

> "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…"

Provided in section 703(a)(2), as codified in 2000e-2(a)(2) of the United States Code, it is impermissible for an employer:

> "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin."

As previously described in section 703(a)(1), section 703(m) further emphasizes that:

> "Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party

demonstrates that race, color, religion, sex, or national origin

was a motivating factor for any employment practice, even

though other factors also motivated the practice."

55.     In Griggs v. Duke Power Co., 401 U.S. 424, 429 (1971), the United States

Supreme Court explained that:

"the language of Title VII makes plain the purpose of Congress

to assure equality of employment opportunities and to eliminate

those discriminatory practices and devices which have fostered

racially stratified job environments to the disadvantage of

minority citizens."

Griggs held that:

"What is required by Congress is the removal of artificial,

arbitrary, and unnecessary barriers to employment when the

barriers operate invidiously to discriminate on the basis of

racial or other impermissible classification." Id. at 431.

56.     The United States Supreme Court, in Texas Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 254 (1981), defined the burden of proof under Title VII of the

Civil Rights Act of 1964. Id. at 248. To establish a prima facie case of disparate

treatment, Burdine provided that:

"The plaintiff must prove by the preponderance of the evidence

that she applied for an available position for which she was

qualified, but was rejected under circumstances which give rise

to an inference of unlawful discrimination." Id. at 253.

57.     In this case, Defendants' refusal to hire Plaintiff for the Vice President,

Corporate Legal position violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq.

58.     As proscribed in section 703(a)(1), Defendants engaged in an unlawful

employment practice when Defendants refused to hire Plaintiff for the Vice President,

Corporate Legal position around January 2021 because of Plaintiff's race as Black or

African American. Plaintiff's claim for discrimination arose at that point.

59.     Defendant impermissibly limited, segregated and classified Plaintiff as an

applicant because of Plaintiff's race. Defendant's conduct deprived Plaintiff of the Vice

President Corporate Legal opportunity. Defendant's action adversely affected Plaintiff.

Defendant's conduct resulted in Plaintiff being blackballed from Defendant's

organization, as forbidden by section 703(a)(2).

60.     Race was a motivating factor for Defendant's employment practice against

Plaintiff, as described in section 703(m).

61.     Similar to Griggs, Defendants fostered a racially stratified job environment

to Plaintiff's disadvantage. Defendants created disturbances and delays throughout

Plaintiff's hiring process on several occasions. Particularly, on January 11, 2021, Defendants caused Plaintiff to shutter when Defendants insinuated their distaste for Black or African American candidates for the Vice President, Corporate Legal position by indirectly acknowledging the pandemic. As a result, Plaintiff perceived Defendants' intention to impart a delay as racially motivated. Defendants failed to assure equal employment opportunity in this instance in addition to several others. As a result, Defendants also failed to eliminate discriminatory practices likely motivated by the pandemic and the political climate of today.

62.     Consequently, but for Defendants' failure to eliminate discriminatory practices during Plaintiff's hiring process, Plaintiff would not have been caused to experience unsavory interactions while filing a charge of discrimination against Oklahoma City Thunder. Beginning in February 2021, the Oklahoma City Area Office ignored processing Plaintiff's charge. The same office prevented Plaintiff from scheduling an intake interview.

63.     Delays continued after Plaintiff's charge was transferred from the Oklahoma City Area Office to the Los Angeles District Office. Notably, when Mr. Hoover shared on April 16, 2021that a Notice of Right to Sue would be issued to Plaintiff. Based on Mr. Hoover's email, Plaintiff perceived that Plaintiff's charge was pending due to an obstruction in the EEOC's process while transferring Plaintiff's charge from the Oklahoma City Area Office to the Los Angeles District Office. Finally, Plaintiff was

caused to experience another unpleasant string of interactions when Plaintiff was forced to follow-up with the Los Angeles District Office's District Director yet Plaintiff's issues still persisted.

64. Defendants sought to create artificial, arbitrary, and unnecessary barriers that prevented Plaintiff, as a member of a racial minority, from being selected for the Vice President, Corporate Legal position. The barriers imposed by Defendants, on numerous occasions, operated to invidiously discriminate based on Plaintiff's race and, as a result, disproportionately impacted communities of color.

65. Plaintiff has suffered and will continue to suffer substantial losses in earnings and job benefits. Plaintiff has suffered and will continue to suffer mental and emotional distress, pain and suffering, all to Plaintiff's damage in an amount to be proven at trial. Plaintiff was rendered sick, sore and disabled, both internally and externally, and has suffered numerous internal injuries, such as severe fright, shock, pain and discomfort. The exact nature and extent of said injuries are not known to Plaintiff, who will request leave of court to insert the same when ascertained. Plaintiff does not at this time know the exact permanence of said injuries, but is informed and believes, and thereon alleges, that some of Plaintiff's injuries are reasonably certain to be permanent in character.

66. Defendants intentionally engaged in the unlawful employment practice described against Plaintiff. Plaintiff, therefore, is entitled to an award of punitive damages against Defendants.

67.     Plaintiff has suffered damages and seeks all remedies available at law and in equity in an amount to be proven at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.     For affirmative action as may be appropriate.

2.     For each offense in an amount that may be determined by a jury.

3.     For a permanent injunction or other order to ensure full and fair consideration from Defendants if Plaintiff seeks similar employment in the future.

4.     For compensatory damages, including back pay, lost wages and benefits, emotional and mental distress, medical and related expenses, and other pecuniary loss not presently ascertained according to proof in an amount to be determined at trial.

5.     For punitive damages.

6.     For prejudgment interest on all amounts claimed.

7.     For any other equitable relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all issues so triable.

Respectfully submitted,

DATED:      July 20, 2021                    JUSTIN H. WILKES

By: _____

JUSTIN H. WILKES

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Justin H. Wilkes<br>18546 Kerill Road<br>Triangle, VA 22172 | From: Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 564-2021-00611 | Garrett D. Hoover,<br>Intake Supervisor | (213) 785-3001 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

|  | More than 180 days have passed since the filing of this charge. |
|---|---|
| X | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
|  | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

|  | The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
|  | The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

| Rosa M<br>Viramontes | Digitally signed by Rosa M<br>Viramontes<br>Date: 2021.04.20 10:09:50 -0700' | April 20, 2021 |
|---|---|---|

Enclosures(s)

**Rosa M. Viramontes,**
**District Director**

(Date Issued)

cc: Katy Sumtner
**Vice President Human Resources**
**OKC THUNDER**
208 Thunder Drive
Oklahoma City, OK 73102